IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

FREDERICK SCOT HUFFMAN                                                                    PLAINTIFF

v.                                              CIVIL ACTION NO. 3:18-cv-00674-DPJ-FKB

DRAYER PHYSICAL THERAPY
INSTITUTE, LLC                                                                            DEFENDANT

**MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

COMES NOW Frederick Scot Huffman, through counsel, and files this Memorandum in Support of Motion for Temporary Restraining Order and Preliminary Injunction against Drayer Physical Therapy Institute, LLC:

**INTRODUCTION**

This Court should enjoin Defendant from enforcing unreasonable restrictive covenants contained in an Employment Agreement between Plaintiff and Defendant. After Defendant hired Plaintiff, a physical therapist, and furthered its business through Plaintiff's preexisting professional relationships and goodwill, Defendant wrongfully terminated Plaintiff in breach of Plaintiff's Employment Agreement. Defendant's egregious behavior, however, did not end with the breach of contract. Defendant now seeks to prevent Plaintiff from contacting the referral sources and providers with whom Plaintiff fostered relationships for years prior to his employment with Defendant. The Defendant must be enjoined.

Plaintiff has a substantial likelihood of success on the merits of his declaratory-judgment claim. Plaintiff breached the Employment Agreement by wrongfully terminating the Plaintiff's employment without cause within the initial two-year term. Because Defendant has breached the

Employment Agreement by wrongfully terminating it without cause, the contractual obligations are unenforceable as to Plaintiff under Pennsylvania law. *Ritz v. Music, Inc.*, 150 A.2d 160, 162 (Pa. Super. 1959) ("Where a principal wrongfully discharges an agent prior to expiration of the contract of agency, the agent is relieved of a covenant not to compete."). Accordingly, this Court should grant injunctive relief to Plaintiff that prohibits Defendant from enforcing the Employment Agreement in any respect.

In addition, even assuming Defendant had not breached the Employment Agreement, which it did, the noncompete/non-solicitation covenants are clearly unenforceable under Pennsylvania law because, as drafted, they are illegal restraints on trade.[1] The restrictive covenants are not reasonably necessary for Defendant's protection, as the restrictive covenants do not safeguard any legitimate, protectable business interest of Defendant. The restrictive covenants prohibit Plaintiff from clients and business with whom Plaintiff has a preexisting relationship before working for Defendant.

The case law is clear that Defendant has no legitimate, protectible interest in restricting Plaintiff from doing business with preexisting clients, contacts and referral sources. *Coskey's Television & Radio Sales and Service, Inc. v. Foti*, 602 A.2D 789 (N.J. Super 1992) (holding that employee's relationships within the industry were not bought and paid for; they were merely rented during the period of employment). In addition, Defendant effectively terminated Plaintiff without cause, thereby indicating that Defendant deems Plaintiff worthless and that it needs no protection from him. *Shepherd v. Pittsburgh Glass Works, LLC*, 25 A.3d 1233, 1246 (Pa. Super

---

[1] The Contract contains a choice-of-law clause, which provides that Pennsylvania substantive law applies to the instant dispute.

2011). The restrictions imposed are also not reasonably limited in duration and geographic extent.

Furthermore, if injunctive relief is not issued, Plaintiff will suffer immediate and irreparable harm. Plaintiff was cut off in the middle of the guaranteed term of his employment with no prospects of meaningful career unless the restrictive covenants are declared void. Plaintiff will lose the benefit of all the business relationships that he built over many years. No monetary remedy can repair these lost relationships. Plaintiff further will be unable to earn a living and support his family. In light of such immediate and irreparable harm above, Defendant lacks the requisite evidence of any harm it would suffer from a TRO or preliminary injunction.

Finally, the public interest is best served by the issuance of injunctive relief. Healthcare providers such as Plaintiff are limited, and the public does not benefit from Plaintiff's being prevented from serving patients. The public does not benefit from unreasonable restraints on trade and competition and on an individual's right to earn a living, especially where an individual such as Plaintiff goes to work for an employer and brings with him several preexisting business relationships only to have the employer act in bad faith and attempt to strip the employee of his life's business relationships.

For all the reasons set forth herein, Plaintiff respectfully requests that the Court issue a Temporary Restraining Order and Preliminary Injunction prohibiting Defendant from attempting to enforce the restrictive covenants contained in the Employment Agreement.

## FACTS

*Pre-existing Goodwill & Relationships.* Since 1997, Frederick Scot Huffman ("Mr. Huffman" or "Plainitiff") has worked as a physical therapist. In addition, he has overseen and

managed the building and business development of physical therapy clinics in Mississippi for several decades.  As a successful practitioner, Dr. Huffman developed many lucrative referral relationships with medical providers.  Having developed his own goodwill in the profession over many decades with medical practitioners and providers, Dr. Huffman successfully initiated, established, managed and sustained multiple physical therapy clinics working for Medicomp Physical Therapy in Mississippi.  Many physical therapy clinics business was established through his work over his years of practice.

During this time, Mr. Huffman developed business relationships with physicians, physical therapists, business managers and other medical providers with practitioners he has known professionally for many years.  Through his honest and quality work and dedication, he developed goodwill with these professionals.  With his former employer, Medicomp, Mr. Huffman, as Regional Director of the South, managed twenty-seven (27) clinics in six (6) different states.  This network of clinics, practitioners, and historically successful business was very attractive to physical therapy companies looking to expand their business.

***Drayer Physical Therapy Institute.*** In or around October 2016, representatives of Drayer Physical Therapy Institute, LLC ("Drayer" or "Defendant") approached Mr. Huffman about coming to work for them.  Drayer sought to expand business in Mississippi and targeted Mr. Huffman due to his extensive experience and goodwill he had established in building clinics and assembling and managing a network of practitioners, physical therapists and business.  Drayer communicated to him their desire to expand their business in Mississippi. Drayer offered Mr. Huffman a position as a Regional Vice President in charge of establishment and staffing multiple physical therapy clinics in Mississippi.

***Employment Agreement.*** Mr. Huffman became employed by Drayer effective October 17, 2016. His employment relationship was memorialized in an Employment Agreement dated September 27, 2016.[2] Thereafter, Mr. Huffman was able to open eight (8) new clinics and solidify business relationships with referral sources, dramatically increasing Drayer's patient volume. As a result of Mr. Huffman's relationships with personnel and referral sources, Drayer now has full-staffed clinics in Forest, Brandon, Pearl, Crystal Springs, Jackson, Flowood, Iuka, Corinth, and Ridgeland.

The Employment Agreement provides for a two-year employment term which automatically renews "... for successive one-year terms thereafter, until terminated by either party upon written notice to the other at least 60 days prior to the end of the initial one-year term or any successive one-year term, or until earlier terminated in accordance with Section 11 hereof."[3]

***Restrictive Covenants***. The Employment Agreement contains a covenant not to compete that prohibits Plaintiff from competing with Defendant in any way for a period of two years within a 25-mile radius of any of Defendant's multiple clinics at which Plaintiff worked or over which Plaintiff exercised any management duties:

> **7.** **Non-Competition**. In consideration of the mutual covenants provided for herein, during the Employment Term with the Company or any of its affiliates and for a period of two (2) years following the termination of Employee's employment with the Company or its affiliates (the "Non-Compete Period"), Employee shall not directly or indirectly (whether for compensation or otherwise) own or hold any interest in, manage, operate, control, provide consulting services to, render services for, or in any manner participate or engage in the business of operating or managing outpatient physical therapy centers or providing rehabilitative or preventative services including without limitation, physical, occupational or speech therapy or other related services provided by the Company (the "Business"), either as a general or limited partner, proprietor, owner, operator,

---

[2] Exhibit A, Employment Agreement.
[3] *Id*. at Section 1.1.

manager, common or preferred equity holder, member, officer, director, manager, agent, employee, consultant, trustee, affiliate or otherwise, in each case, within the Territory. If the Employee ceases to provide services to the Company during any one-year period hereunder, this non-compete covenant shall endure a period of two years from date of last pay. The "Territory" includes all areas within a twenty-five (25) mile radius of any clinic (a) owned, operated or managed by the Company or its affiliates and (b) at which Employee worked, for which Employee had any responsibilities or which Employee managed in any way within the last two (2) years of Employee's employment.

The Employment Agreement further contains a non-solicitation clause that prohibits Plaintiff from contacting, *inter alia*, his former clientele and referral sources:

induce or attempt to induce any referral source, payor, patient, developer, client, member, supplier, vendor, service provider, licensee, licensor, lessor, franchisee or other business relation of the Company or its affiliates to cease doing business, reduce its business or not increase its business with the Company, or in any way interfere with the relationship between any such referral source, payor, patient, developer, client, member, supplier, vendor, service provider, licensee, licensor, lessor, franchisee or other business relation and the Company (including, without limitation, making any negative statements or communications about the Company or its affiliates).

***Drayer's Breach of the Employment Agreement.*** In or about January 2018, a private equity firm named Revelstoke Capital Partners ("RCP"), through its portfolio company, Upstream Rehabilitation, Inc. ("Upstream"), acquired Drayer. After that date, Drayer's operations changed. By letter dated July 30, 2018, Drayer gave Plaintiff written notice of non-renewal of the Employment Agreement, thereby terminating Plaintiff's employment without cause.[4]

Drayer breached the express terms of the Employment Agreement by wrongfully terminating the contract without cause within the initial two-year employment term. Pursuant to the language of Employment Agreement, Mr. Huffman's employment could be terminated "...

---
[4] Exhibit B, Termination Letter.

[at] end of the initial one-year term or any successive one-year term, or [for cause]."[5] The Employment Agreement makes clear that Mr. Huffman's employment was for three years unless terminated for cause. This period was described establishing a two-year term followed by automatic one year terms.

The Employment Agreement could be terminated at the end of the initial one year period without cause, but not before. Accordingly, Mr. Huffman's guaranteed period of employment is three years through October 17, 2019. Drayer wrongfully and in breach of contract terminated the Employment Agreement in 2018. Drayer's breach was willful, wanton, and with reckless disregard for the rights of Mr. Huffman.

Because Drayer materially breached the Employment Agreement, the covenants are not enforceable as a matter of law. In addition, these clauses are unenforceable as restraints on Plaintiff's rights to practice physical therapy as he did before ever working with Drayer. These restrictive covenants have the effect of prohibiting Plaintiff from engaging in business with people and entities with whom Plaintiff developed and maintained business relationships many years before Plaintiff began working for Defendant.

The clear intent of these restrictive covenants is to prevent fair competition by Plaintiff and not to protect any goodwill, or legitimate business interests, of the Defendant. Rather, the covenants deprive Plaintiff of goodwill he developed over the course of his career as a physical therapist. In addition, because Defendant materially breached the Employment Agreement, the covenants within the Employment Agreement are not enforceable. Essentially, Drayer hired Mr.

---

[5] Exhibit A, Employment Agreement at Section 1.1.

Huffman, secured his business and then terminated him with the threat of enforcement of the non-competition and non-solicitation clauses.

## STANDARD

When considering a request for injunctive relief under Federal Rule of Civil Procedure 65, courts consider whether a plaintiff can show the following: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any harm that the injunction might cause to the defendant; and (4) that the injunction will not disserve the public interest." *Campaign for S. Equal. v. Bryant*, 64 F. Supp. 3d 906, 920 (S.D. Miss. 2014), *aff'd,* 791 F.3d 625 (5th Cir. 2015) (citing *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 288 (5th Cir. 2012)).

In addition to these four factors, temporary restraining orders carry the following requirements: (A) specific facts that clearly show that immediate and irreparable injury, loss, or damage will result before the adverse party can be heard in opposition; and (B) the movant's attorney must certify in writing any efforts made to give notice and the reasons why it should not be required. *Richland Equip. Co., Inc. v. Deere & Co.*, 2017 WL 7037742, at *1 (S.D. Miss. July 18, 2017); Fed. R. Civ. P. 65(b)(1).

## ARGUMENT

**I. PLAINTIFF CAN ESTABLISH A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS.**

This Court should grant Plaintiff a temporary restraining order and preliminary injunction because Plaintiff can establish likelihood of success on the merits. "All courts agree that plaintiff must present a prima facie case but need not show that he is certain to win." 11A Wright & Miller, Fed. Prac. & Proc. Civ. § 2948.3 (3d ed.). Plaintiff seeks a declaratory-judgment finding

that (1) the Employment Agreement is not enforceable because Drayer breached the plain terms of the Employment Agreement and, alternatively, (2) that the restrictive covenants are not enforceable against Plaintiff under Pennsylvania law.

Plaintiff has a substantial likelihood of success on the merits of his declaratory-judgment claim because Drayer (a) breached the plain terms of the Employment Agreement, rendering the covenants unenforceable, and (b) the noncompete/non-solicitation clauses are unreasonably broad under Pennsylvania law, preventing only fair competition and not protecting any legitimate business interest.

### A. *Drayer Breached the Employment Agreement, Rendering All Restrictive Covenants Unenforceable.*

Plaintiff can establish likelihood of success on the merits because Defendant breached the plain terms of the Employment Agreement, rendering the covenants void. Under Pennsylvania law, a breach of contract action involves (1) the existence of a contract, (2) a breach of a duty imposed by the contract, and (3) damages. *J.F. Walker Co., Inc. v. Excalibur Oil Group, Inc.,* 792 A.2d 1269 (Pa. Super. 2002).

The Employment Agreement provides for a two-year employment term which automatically renews "... for successive one-year terms thereafter, until terminated by either party upon written notice to the other at least 60 days prior to the end of the initial one-year term or any successive one-year term, or until earlier" for cause:

> 1.1 *Employment Term*. The employment term of this Agreement (the "Employment Term") shall commence on October 17, 2016 and shall continue for a period of two years, and shall automatically renew for successive one-year terms thereafter, until terminated by either party upon written notice to the other at least 60 days prior to the end of the initial one-year term or any successive one-year term, or until earlier terminated in accordance with Section 11 hereof."[6][7]

---

[6] Exhibit A, Section 1.1 of Employment Agreement.
[7] *Id.*

The plain terms of the Employment Agreement establish that Drayer could terminate upon written notice "at least 60 days prior to the end of the initial one-year term" via writing, but if it chose to terminate earlier than the end of the initial one-year term (or the third year), then Drayer had to terminate the agreement in accordance with Section 11, which requires death, disability, or cause for termination of the Employment Agreement.[8]

On July 30, 2018, not long after the ownership of Drayer changed, Drayer gave Plaintiff written notice of non-renewal,[9] thereby terminating Plaintiff's employment without cause.[10] Drayer breached the express terms of the Employment Agreement by terminating the contract without cause within the initial two-year employment term.

Because Drayer breached the employment agreement, the restrictive covenants are not enforceable as a matter of law. Where the employer breaches the employment agreement, the employee is relieved of any covenants not to compete. *See Ritz v. Music, Inc.*, 150 A.2d 160, 162 (Pa. Super. 1959) ("Where a principal wrongfully discharges an agent prior to expiration of the contract of agency, the agent is relieved of a covenant not to compete.").

Accordingly, this Court should grant Plaintiff injunctive relief because Plaintiff has shown a substantial likelihood of success on the merits. The covenants are not enforceable.

### B. *The Covenants Are Unenforceable Because They Fail to Protect the Legitimate Interests of the Employer.*

The "presence of a legitimate, protectable business interest of the employer is a threshold requirement for an enforceable non-competition covenant." *WellSpan Health v. Bayliss,* 869 A.2d

---

[8] *Id*.; *see also* Section 11. *Termination* at p. 8.
[9] *See* Exhibit B, Termination Letter.
[10] Section 11.3 of the Employment Agreement addresses termination for cause. Defendant did not terminate Plaintiff for cause.

990, 997 (Pa. Super. 2005). The restrictive covenant "must be 'reasonably related to the protection of a legitimate business interest.'" *Bayliss*, 869 A.2d at 996 (citing *Hess* at 918). "The type of interests that have been recognized in the context of a non-competition covenant include trade secrets or confidential information, unique or extraordinary skills, customer good will, and investments in an employee specialized training program." *Id.* (citing *Hess* at 920; *Pennsylvania Funds Corp. v. Vogel,* 159 A.2d 472, 475-76 (Pa. 1960)). "In contrast, a post-employment covenant that merely seeks to eliminate competition *per se* to give the employer an economic advantage is generally not enforceable." *Id.* (citing *Hess* at 918, 920-21).

"The court must consider the facts and circumstances on a case-by-case basis." *Insulation Corp. of America v. Brobston,* 667 A.2d 729, 733-34 (Pa. Super. 1995). If the restrictive covenant is broader than necessary to protect the employer, the court may limit enforcement to those restrictions in the covenant that are reasonably necessary to protect the employer. *Id.* at 737; *Morgan's Home Equip. Corp. v. Martucci,* 136 A.2d 838, 848 (Pa. 1957).

Here, the restrictive covenants attempt to prohibit Plaintiff from contacting those referral sources and clients with whom Plaintiff already had an existing business relationship and established goodwill. Plaintiff had been a physical therapist in Mississippi for twenty-nine (29) years before working for Defendant. As a successful practitioner, Plaintiff developed many lucrative referral relationships with providers. Defendant sought the benefit of Plaintiff's business relationships when Defendant approached Plaintiff and hired him in 2016 as Defendant's Regional Vice President. Plaintiff then worked to develop multiple physical therapy clinics for Defendant throughout Mississippi.

Defendant has no legitimate interest in preventing Plaintiff from doing business with referral sources and providers with whom he had relationships that preexisted his employment with Defendant. Accordingly, Defendant is simply trying to eliminate fair competition in the industry, after wrongfully terminating Plaintiff and pirating his goodwill. The case law is clear:

- *Coskey's Television & Radio Sales and Service, Inc. v. Foti*, 602 A.2D 789 (N.J. Super 1992) (holding that employee's relationships within the industry were not bought and paid for; they were merely rented during the period of employment);
- *DeWitt Stern Grp., Inc. v. Eisenberg*, 14 F. Supp. 3d 480, 485-86 (S.D.N.Y. 2014) ("As a general rule, an employee cannot be prevented from soliciting clients with whom he had pre-existing relationships, or using information based on casual memory.");
- *Barbagallo v. Marcum LLP*, 925 F. Supp. 2d 275, 295 (E.D.N.Y. 2013) (dismissing breach of restrictive covenant claim because former employee had "pre-existing relationships" with all the clients at issue; "sensible clients follow the talent they trust, and not the organizations to which that talent is temporarily attached. Clients are not dragged against their will from one firm to another, but actively choose who they will retain for professional services.") (collecting cases);
- *Nebraskaland, Inc. v. Brody,* 2010 WL 157496, at *3 (S.D.N.Y. Jan. 13, 2010) ("*BDO Seidman* prevents the Court from enforcing the restrictive covenant" to retrain solicitation of customers with whom defendant had a "pre-existing relationships");
- *Good Energy, L.P. v. Kosachuk,* 49 A.D.3d 331, 332, 853 N.Y.S.2d 75 (1st Dep't 2008) (non-compete clause unenforceable because it prohibited former employee from working with clients who followed him due to his "pre-existing relationship" with them).

Having developed his own goodwill in the profession over many decades, Plaintiff was able to staff multiple clinics and to ensure referrals from various providers. Plaintiff cannot be prevented from working in the geographic area he has long worked in and serving or soliciting clients and business infrastructure with whom he had a preexisting relationship.

In sum, this Court should find a substantial likelihood of success on the merits because the restrictive covenants fail to protect a legitimate business interests of the employer.

  ***C. The Covenants Are Unenforceable Because Plaintiff's Interest in Earning a***

### *Living as Physical Therapist Outweighs Defendant's Business Interests.*

"If the threshold requirement of a protectable business interest is met, the next step in analysis of a non-competition covenant is to apply the balancing test defined by our Supreme Court." *Bayliss*, 869 A.2d at 999 (citing *Hess,* 808 A.2d at 920). "First, the court balances the employer's protectable business interest against the employee's interest in earning a living. Then, the court balances the employer and employee interests with the interests of the public." *Id.* (citing *Hess,* 808 A.2d at 920).

As mentioned above, Defendant has no legitimate interest in preventing Plaintiff from competing fairly with his former employer. Plaintiff already knew the existence of the providers and had already formed relationships with referral sources before he came to work for Defendant. The non-solicitation clause, therefore, is overly broad in that it prevents Plaintiff from soliciting business and contacting for two years those providers and referral sources that he had knowledge of before working for Defendant. As set forth in detail above, Defendant has no legitimate interest in preventing Plaintiff from competing fairly.

Even assuming a protectable interest existed, Defendant has undercut its alleged interest by terminating Plaintiff without cause. "[T]he fact that an employee is terminated without cause is a factor that can be considered in determining whether enforcement of a non-compete advances the employer's business interest." *Shepherd v. Pittsburgh Glass Works, LLC*, 25 A.3d 1233, 1246 (Pa. Super. 2011). In this regard, courts reason as follows:

> Where an employee is terminated by his employer on the grounds that he has failed to promote the employer's legitimate business interests, **it clearly suggests an implicit decision on the part of the employer that its business interests are best promoted without the employee in its service. Such an employer deems the employee worthless**. Once such a determination is made by the employer, the need to protect itself from the former employee is diminished by the fact that the employee's worth to the corporation is presumably insignificant.

*Id.* (emphasis added). Here, Defendant made the decision that Plaintiff was worthless by terminating the Plaintiff without cause and in breach of the Employment Agreement. On July 30, 2018, not long after the ownership of Drayer changed, Drayer gave Plaintiff written notice of non-renewal, thereby terminating Plaintiff's employment in bad faith and without cause. Accordingly, Defendant's interest in enforcement of the covenant pales in comparison to Plaintiff's interest in continuing to work in the physical therapy industry without restriction after twenty-nine (29) years of building relationships and to support his family.

Moreover, the two-year, 25-mile restrictions in the non-competition agreements severely cripple Plaintiff's ability to practice as a physical therapist in Mississippi. The non-competition covenant demands that the Plaintiff "shall not directly or indirectly … own or hold an interest in, manage, operate, control, provide consulting services to, render services for, or **in any manner** participate or engage in the business of operating or managing outpatient physical therapy centers…"[11] These restrictions apply within the Territory, which includes "all areas within a twenty-five (25) mile radius of any clinic (a) owned, operated or managed by the Company or its affiliates and (b) at which Employee worked, for which Employee had any responsibilities or which Employee managed in any way with the last two (2) years…"

Accordingly, the restrictions apply to each of the nine clinics where Plaintiff worked or managed "**in any way**" while in Defendant's employ "**within the last two years**."[12] Under Defendant's covenant, Plaintiff could have stopped by the clinic for a single afternoon over a year and a half before his termination to speak to an employee about a matter and would still be

---

[11] Exhibit A, Employment Agreement at Section 7 (emphasis added).
[12] *Id.* ("The 'Territory' includes all areas within a twenty-five (25) mile radius of any clinic (a) owned, operated or managed by the Company or its affiliates and (b) at which Employee worked, for which Employee had any responsibilities or which Employee managed in any way within the last two (2) years of Employee's employment.").

prohibited from opening a competing clinic within 25 miles of the clinic for two years. This restriction is overly broad on its face, fails to take into account whether and to what extent the Plaintiff developed relationships with actual patients, and is meant to keep Plaintiff from fairly competing with Defendant, not to protect the employer's legitimate interests.

In sum, this Court should grant Plaintiff a temporary restraining order and preliminary injunction because Plaintiff can establish likelihood of success on the merits of its declaratory-judgment claim.

## II.   PLAINTIFF CAN ESTABLISH A SUBSTANTIAL THREAT OF IRREPARABLE HARM IF NO INJUNCTION ISSUES.

This Court should grant Plaintiff a temporary restraining order and preliminary injunction because if no injunction is issued, Plaintiff will be subject to imminent and irreparable harm. An injury is irreparable if it cannot be undone through monetary remedies. *Campaign for S. Equal. v. Bryant*, 64 F. Supp. 3d 906, 949 (S.D. Miss. 2014), *aff'd,* 791 F.3d 625 (5th Cir. 2015) (citing *Deerfield Med. Ctr. v. City of Deerfield Beach,* 661 F.2d 328, 338 (5th Cir.1981)).

If injunctive relief is not issued, Plaintiff will suffer immediate and irreparable harm. His employment relationship with Drayer was wrongfully terminated. He is now in a situation where without immediate injunctive relief, he will be unable to support his family. In addition, Plaintiff will lose the benefit of the goodwill he built over decades and the business relationships he has had. Mr. Huffman further is subject to scrutiny due to Drayer's termination of him after only recently moving his business relationships to Drayer. This slander of his good name will have lasting effects unless immediate relief is provided. No monetary remedy can repair these damages to goodwill, loss of relationships and slander. Mr. Huffman has worked to develop the business and relationships he has in central Mississippi. The Plaintiff's own investment of time

and effort in developing these pre-existing relationships is not compensable through monetary damages because the referral relationship depends on the network of professional relationships that the Plaintiff developed over time between referring physicians and himself. *Sovereign Bank v. Harper*, 449 Pa. Super. 578, 593, 674 A.2d 1085, 1093 (1996) ("An injury is regarded as 'irreparable' if it will cause damage which can be estimated only by conjecture and not by an accurate pecuniary standard.").

### III. HARM TO THE PLAINTIFF OUTWEIGHS ANY HARM TO DEFENDANT IF NO INJUNCTION ISSUES.

"If a court has made a finding of irreparable harm, a party opposing injunctive relief 'would need to present powerful evidence of harm to its interests' to prevent the scales from weighing in the movant's favor." *Campaign for S. Equal. v. Bryant*, 64 F. Supp. 3d 906, 950 (S.D. Miss. 2014), *aff'd*, 791 F.3d 625 (citing *Opulent Life Church*, 697 F.3d 297).

Here, Defendant lacks the requisite "powerful evidence" of any harm it would suffer from a TRO or preliminary injunction. In this case, as of January 2018, one and a half years after Mr. Huffman went to work for Drayer, the company was acquired by Upstream of RCP. RCP is the owner of $1 Billion in assets. Upstream and Drayer are part of this empire. Mr. Huffman grew up in Scott County and spent the last twenty-nine (29) years in the physical therapy business. He has built business relationships throughout this time and brought those to Drayer. He has a family and enforcement of the Employment Agreement against him will destroy his ability to support his family and work in the only career he has ever known. Drayer will not be materially affected by non enforcement of the covenants one way or the other.

Further, as shown above, the covenants sought to be declared unenforceable do not safeguard any legitimate, protectable interest of Drayer and are not enforceable as Drayer breached the plain terms of the EMployment Agreement.

## IV. AN INJUNCTION WOULD SERVE THE PUBLIC'S INTEREST.

The public interest is best served by the issuance of a Temporary Restraining Order and Preliminary Injunction. Healthcare providers such as Plaintiff are limited, and the public does not benefit from Plaintiff's being prevented from serving patients. The public likewise does not benefit from unreasonable restraints on trade and competition and on an individual's right to earn a living. This principle holds true especially where an individual such as Plaintiff goes to work for an employer and brings with him several preexisting business relationships.

Defendant benefited from Plaintiff's preexisting business relationships while Plaintiff served as Defendant's employee. Defendant now seeks to continue benefiting from Plaintiff's preexisting business relationships while not only casting Plaintiff aside but also prohibiting him from competing and from soliciting the Plaintiff's preexisting relationships. This Court should protect the public interest by refusing to allow Defendant to commandeer Plaintiff's preexisting relationships. This Court should declare the noncompete/non-solicitation clauses unenforceable and thereby promote reasonable competition.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter a TRO and Preliminary Injunction enjoining Defendant from enforcing the covenant not to compete and non-solicitation clause. Plaintiff respectfully prays that this Court grant Plaintiff a TRO allowing him to do business in all geographic areas he has done business over the years, continue to accept

all referrals from providers with whom he had a pre-existing business relationship and to maintain and work with all business relationships that existed prior to his employment with Drayer.  Plaintiff also prays that this TRO be converted to a Preliminary Injunction and Permanent Injunction.

       This the 4th day of October, 2018.

Respectfully submitted

Frederick Scot Huffman


By: /s/ Michael A. Heilman
     Michael A. Heilman
     *Attorney for Plaintiff*

OF COUNSEL:
Michael A. Heilman (MSB No. 2223)
E. Taylor Polk (MSB No. 103653)
Daniel J. Hammett (MSB No. 105500)
HEILMAN LAW GROUP, P.A.
Meadowbrook Office Park
4266 I-55 North, Suite 106
Jackson, Mississippi  39211
Telephone:	(601) 914-1025
Facsimile:	(601) 960-4200
mheilman@heilmanlawgroup.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I have this day caused the foregoing document to be electronically filed with the Clerk of the Court using the ECF system, which sent notification to all counsel of record, with the exception of the following, which was served via hand delivery:

Drayer Physical Therapy Institute, LLC
℅ Cogency Global, Inc.
248 E Capitol Street, Suite 840
Jackson, MS 39201

This the 4th day of October, 2018.

>*/s/ Michael A. Heilman*
>Michael A. Heilman